UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA


GWEN STUTSMAN,                          )
                                        )
              Plaintiff,                )
                                        )
v.                                      )   Case No. 14-CV-0241-CVE-FHM
                                        )
CAROLYN COLVIN,                         )
Acting Commissioner of Social Security  )
Administration,                         )
                                        )
                                        )
              Defendant.                )


# OPINION AND ORDER

Now before the Court is the Report and Recommendation (Dkt. # 20) of Magistrate Judge Frank H. McCarthy recommending that the Court affirm the Commissioner's decision that plaintiff Gwen Stutsman was not disabled before her 55th birthday. Plaintiff has filed an objection (Dkt. # 21) to the report and recommendation, and defendant has filed a response (Dkt. # 22) to plaintiff's objection. Plaintiff has also filed a reply (Dkt. # 23).

## I.

Plaintiff applied for disability and supplemental security income (SSI) benefits on March 16, 2007, and she was 51 years old at the time of her application. She claimed that she was disabled because of back problems, osteoporosis, and high blood pressure. Plaintiff's claims were initially denied and she requested a hearing before an administrative law judge (ALJ). The ALJ entered a written decision denying plaintiff's claims for benefits and the Appeals Council declined to review the ALJ's decision. Plaintiff appealed the ALJ's decision to this Court, and the Court reversed and remanded the ALJ's decision for further consideration. See Stutsman v. Astrue, 2012 WL 2789736

(N.D. Okla. May 10, 2012) (Court's opinion and order remanding case for further proceedings). The Court found that the ALJ failed to specify whether he was treating two letters from a treating physician, Raeanne Lambert, D.O., as medical opinions or disability opinions, and the ALJ's written decision did not show that she had considered medical records of Dr. Lambert's treatment of plaintiff.

On remand, the Appeals Council noted that plaintiff had filed a subsequent application for SSI benefits, and she had received a favorable decision awarding her SSI benefits as of October 29, 2010. Dkt. # 11, at 324. As to the second application, the ALJ found that plaintiff was limited to performing a reduced range of light work and, based on plaintiff's age (55), education, prior work experience, and residual functional capacity (RFC), the ALJ determined that Medical-Vocational Rule 202.04 (Grid) was applicable. Id. Application of the Grid required the ALJ to find that plaintiff was disabled. Id. The Appeals Council remanded this case for further proceedings to determine if plaintiff was disabled prior to October 29, 2010.

An administrative hearing before the ALJ was set for August 19, 2013, and plaintiff appeared at the hearing with counsel. Id. at 276. At issue during the hearing was whether plaintiff was entitled to benefits for the time period between May 31, 2004, the alleged date of onset of disability, to October 28, 2010.[1] Id. at 278. Plaintiff's attorney argued that plaintiff suffered from a combination of impairments during that time period that prevented her from working. Id. at 279. Plaintiff's attorney also mentioned that plaintiff suffered from breathing problems and depression before September 2005. The ALJ reviewed plaintiff's past work history and plaintiff had worked

---

[1] The ALJ noted that plaintiff turned 55 for the purposes of Social Security on the day before her 55th birthday, or October 28, 2010. Id. at 267. The Court will use the date of October 28, 2010 as the relevant date in this Opinion and Order.

at several restaurants as a waitress. Id. at 280-81. Plaintiff stated that she stopped working as a waitress due to back pain and she has not worked since May 2004. Id. at 281. She testified that her physicians had not recommended back surgery or any other treatment, but she took painkillers for her back pain. Id. at 282-83. Plaintiff had surgery on her left knee in 1992, and she claimed that she experienced discomfort when she was working. Id. at 284. She stated that she twisted her left wrist and sometimes experienced pain in her left wrist, but her left hand is not her dominant hand. Id. at 285. She also claimed that she suffered from depression, but she did not have the means to pay for professional treatment for depression. Id. at 286-87. Mark Cheairs, a vocational expert (VE),[2] testified that plaintiff had prior work experience as a waitress, but the ALJ determined that plaintiff's employment at a convenience store did not qualify as past relevant work. Id. at 289-91. The ALJ asked the VE about jobs available to a 48 year old who could perform light work, and the VE testified that there were numerous jobs that could be performed by such a person, including plaintiff's past relevant work as a waitress. Id. at 292. Assuming that the hypothetical claimant could perform sedentary work only, the hypothetical claimant could not perform plaintiff's past relevant work as a waitress, but there would be other jobs available to the hypothetical claimant. Id. at 293. Even if the VE assumed that the hypothetical claimant had limited use of her non-dominant hand, there would still be work that could be performed by the hypothetical claimant if she could complete light work. Id. at 294.

The ALJ entered a written decision denying plaintiff's claim for disability and SSI benefits for the time period before October 28, 2010. She stated that the Appeals Council directed her "to

---

[2] The Court relies on the spelling of the VE's name stated in the ALJ's written decision, rather than the spelling of "Cheers" provided in the transcript of the administrative hearing.

discuss the medical evidence of record and 16 office visits from 2004 to 2008 . . . and to discuss whether Dr. Lambert's letters from November 2004 and July 2005 are medical opinions or disability opinions." Id. at 259. The ALJ found that plaintiff had the severe impairment of degenerative disc disease, but she determined that plaintiff's complaints of hypertension, hand problems, and depression were non-severe and/or non-medically determinable. Id. at 262. The ALJ determined that plaintiff had the RFC to perform the full range of light work. Id. The objective medical evidence did not support plaintiff's claim that she suffered from severe back pain, even though she did appear to have "age appropriate degenerative changes." Id. at 263. The ALJ extensively analyzed the two letters in which Dr. Lambert stated that plaintiff "is currently unable to work due to acute joint and back pain and should continue to receive food stamps," and she concluded that the letters did not express a medical opinion:

> I find that these letters are not medical opinions. While [Dr. Lambert] references her relationship to the claimant and mentions back and joint pain, she does not specifically discuss the impairments with any associated functional limitations. The actual nature of the letter is clear, and that is to support the claimant in continuing to receive food stamps. The letters do not state that claimant is disable [sic], per se, which in and of itself is an issue reserved for the Commissioner. However, they seemingly are more rhetorical in nature with a syllogistic meaning of "the claimant has pain and therefore cannot work and therefore needs continued food stamps." While Dr. Lambert does not state that premise clearly, it appears to be the clear interpretation of her intent. Accordingly, as it is not a medical opinion, I have considered it, but do not ascribe any weight to it.

Id. at 264. The ALJ reviewed the actual medical records from plaintiff's visits to Dr. Lambert during 2005, and Dr. Lambert's treatment notes did not identify any abnormal musculoskeletal or neurological findings, even though plaintiff did complain of back pain. Id. The ALJ did not entirely disregard the two letters stating a disability opinion, but she did not give the opinions stated in the letters any significant weight. Id. at 265. Even if the ALJ were to treat the letters as medical

4

opinions, she found no objective medical evidence that would support Dr. Lambert's conclusion that plaintiff was unable to perform any work. Id. The ALJ considered the report of a consultative medical examiner, Sidney Williams, M.D., and she generally found Dr. Williams' assessment to be "thorough." Id. Dr. Williams concluded that plaintiff had "chronic back strain, degenerative arthritis of the lumbar spine, costochondritis and unstable angina pectoris likely due to underlying hypertensive disease." Id. at 264. However, the ALJ found that Dr. Williams assessed plaintiff as having degenerative disc disease without examining any x-rays and he diagnosed unstable angina pectoris based only on plaintiff's subjective complaints, and the ALJ gave these opinions less weight than Dr. Williams other diagnoses. Id. The ALJ also determined that plaintiff's credibility was somewhat reduced by the lack of objective medical evidence to support her claims of severe back pain. Id. at 266. The ALJ ultimately concluded that there were jobs available that plaintiff could have performed based on her age, education, work experience, and RFC, and plaintiff was not disabled before October 28, 2010. Id. at 268.

Plaintiff asked the Appeals Council to review the ALJ's decision to deny disability benefits before October 28, 2010, but she did not file written exceptions or a timely request for an extension of time to file written exceptions. Id. at 250. The Appeals Council declined to review the ALJ's decision and the ALJ's decision became the final decision of the Commissioner. Id. Plaintiff appealed the ALJ's decision to this Court, and the matter was referred to a magistrate judge for a report and recommendation. The magistrate judge recommends that the Commissioner's decision to deny plaintiff's claims for disability and SSI benefits before October 28, 2010 be affirmed.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

**III.**

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See Id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen,

844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991). The ALJ issued a written decision that was reviewed by the Appeals Council, which is a final decision by an administrative agency. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

**A.**

Plaintiff argues that the ALJ committed numerous errors in her evaluation of the medical evidence and opinion evidence from treating physicians. She claims that the ALJ disregarded the opinions of a treating physician, Dr. Lambert, without conducting a proper treating physician analysis. Dkt. # 21, at 3. Under Krauser v. Astrue, 638 F.3d 1324 (10th Cir. 2011), an ALJ is

7

required to engage in a two step inquiry when reviewing the "medical opinions of a claimant's treating physician." Id. at 1330. In this case, the ALJ determined that the two letters drafted by Dr. Lambert to assist plaintiff in obtaining food stamps were not medical opinions. Dkt. # 11, at 263-64. Instead, the ALJ found that Dr. Lambert's letters stated an opinion on the ultimate issue of plaintiff's status as disabled, and this decision is reserved solely for the Commissioner. Id. at 264. A treating physician may offer an opinion that a claimant is totally disabled, but "[t]hat opinion is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." Castellano v. Sec. of Health and Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). In contrast, a medical opinion "reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions." Id.

The two letters prepared by Dr. Lambert stating that plaintiff "is currently unable to work due to acute joint and back pain" were properly treated by the ALJ as disability opinions, rather than medical opinions. Dr. Lambert provides no diagnosis of any particular medical conditions or limitations, aside from a general reference to joint and back pain, but she does express an opinion about plaintiff's ability to work. The ALJ reasonably concluded that Dr. Lambert's letters stated a disability opinion. Plaintiff argues that the ALJ disregarded the letters solely because the letters were in reference to plaintiff's application for food stamps. Dkt. # 21, at 3-4. The ALJ did mention the context in which the letters were drafted, but the ALJ's decision does not suggest that she rejected the opinions stated in the letters because the letters were written to help plaintiff obtain food stamps. Dkt. # 11, at 264. Instead, the ALJ references plaintiff's application for food stamps to assist in determining the nature of the opinions offered by Dr. Lambert. Nothing in the ALJ's

8

written decision suggests that she declined to consider Dr. Lambert's opinions as medical opinions because of the context in which the opinions were being offered.

Plaintiff also challenges the ALJ's finding that the objective medical evidence did not support Dr. Lambert's general statement that plaintiff suffered from "acute joint and back pain." Dkt. # 21, at 4-5. The Court has reviewed the medical records cited by plaintiff and there are numerous references to plaintiff's subjective complaints of back pain. Dr. Lambert also notes that plaintiff had been told that she had osteoarthritis, but Dr. Lambert did not actually diagnose this condition. Dkt. # 11, at 201. However, the ALJ correctly assessed the evidence in the administrative record when she stated that Dr. Lambert's notes showed "[n]o abnormal musculoskeletal or neurological findings" that would explain plaintiff's back pain. Id. at 264. The medical records from plaintiff's visits to Dr. Lambert do not provide objective medical evidence that plaintiff suffered from "acute joint and back pain."

Plaintiff argues that the ALJ was required to recontact Dr. Lambert to clarify her opinions in the two letters, because the ALJ's decision suggests that there was some ambiguity or inconsistency in the evidence. Dkt. # 21, at 6. Under 20 C.F.R. § 404.1520b(c), an ALJ may recontact a treating physician if there is "insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled." The regulation specifically states that an ALJ <u>may</u> recontact a treating physician or take other steps listed in the regulation, but the regulation does not impose a requirement on the ALJ to take any of the listed actions. 20 C.F.R. § 404.1520b(c). Plaintiff cites <u>McGoffin v. Barnhart</u>, 288 F.3d 1248 (10th Cir. 2002), for the proposition that an ALJ is required to recontact a treating physician when medical evidence contains a conflict or ambiguity that must

9

be resolved. Id. at 1252. McGoffin was decided before the current version of § 404.1520b(c) took effect, but the version of the regulation in effect has no bearing on the outcome of this case. The ALJ found no ambiguity or inconsistency in the medical evidence, and recontacting Dr. Lambert was unnecessary. Plaintiff claims that the ALJ found an ambiguity in the two letters drafted by Dr. Lambert and the ALJ should have sought clarification. However, clarification would not have changed the ALJ's reasonable conclusion that Dr. Lambert was expressing a disability opinion in the letters.

Plaintiff asserts that the ALJ erred in her decision to afford some, but not great, weight to certain opinions stated in the report of the consultative examiner, Dr. Williams. The ALJ's written decision states that she had "considered Dr. Williams' assessment and generally [found] it thorough." Dkt. # 11, at 264. The ALJ noted that Dr. Williams diagnosed degenerative disc disease without reviewing any x-rays and that his diagnosis of angina pectoris was based only on plaintiff's subjective complaints. Id. Due to this lack of foundation for certain opinions, the ALJ afforded Dr. Williams' report "some, but not great weight." Id. at 265. The Court finds that the ALJ's findings are supported by substantial evidence. Dr. Williams' report does not reference any medical records, such as x-rays, that he reviewed in preparing his report, and there are no objective findings supporting a diagnosis of angina pectoris. Id. at 215-16. Plaintiff claims that the ALJ substituted her opinions for those of Dr. Williams, but the ALJ simply chose to afford less weight to opinions that were not supported by objective medical evidence. The ALJ did not disregard Dr. Williams' report, and her decisions to afford less weight to certain opinions were supported by the administrative record.

Plaintiff argues that the ALJ's failed to specifically discuss the findings of DDS reviewers. Dkt. # 21, at 7. The magistrate judge considered these arguments, and he recommend that any error was not prejudicial because the opinions of the DDS reviewers were not favorable to plaintiff. Dkt. # 20, at 9. The Court has reviewed the DDS examination report, and the RFC adopted by the ALJ is entirely consistent with exertional limitations found by DDS examiners. Id. at 226, 262. Even if the DDS examination report was not specifically discussed, the ALJ had clearly reviewed the report and adopted its findings. The Court also agrees with the magistrate judge that the DDS examination findings were unfavorable to plaintiff and, even if the ALJ's analysis of the DDS report was inadequate, plaintiff cannot show that the outcome of the proceedings were affected because the limitations recommended in the report were included in the ALJ's written decision. See Keyes-Zachary, 695 F.3d 1156, 1162-63 (10th Cir. 2012).

Plaintiff's final argument concerning the ALJ's review of the medical evidence concerns the ALJ's failure to specifically mention the findings and opinions of John Karr, D.C., and Jim Martin, M.D. Dr. Carr conducted a disability evaluation of plaintiff in March 1988 and he found that plaintiff had a "23% whole man permanent impairment to the thoraco-lumbo-pelvic spine." Dkt. # 11, at 164. Dr. Martin examined plaintiff in July 1993 and he concluded that plaintiff had a 42 percent permanent partial impairment. Dkt. # 11, at 166-67. However, plaintiff continued to work for 11 years after she was seen by Dr. Martin. In addition, the primary impairment identified by Dr. Karr and Dr. Martin was back pain, and the ALJ expressly found that plaintiff had the impairment of degenerative disc disease. Nothing in the reports of Dr. Karr or Dr. Martin would have supported the existence of any additional impairments during the relevant time period. The Court finds no error in the ALJ's failure to specifically discuss medical records that predated the alleged onset of

11

disability by over a decade and, even if there were any error, plaintiff has not shown that consideration of this evidence would have affected the outcome in any way.

**B.**

Plaintiff argues that the ALJ erred at steps two through five of the analysis, because the ALJ failed to consider all of plaintiff's alleged impairments. Dkt. # 21, at 8-10. Defendant responds that there was no objective medical evidence in the administrative record supporting plaintiff's claims that she had severe impairments of high blood pressure, hand pain, and depression. At step two of the analysis, the ALJ must consider the claimant's alleged impairments and determine whether the impairments are severe or nonsevere. An impairment or combination of impairments is "not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). To qualify as a severe impairment, the impairment must be a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007). Once the ALJ finds at least one severe impairment at step two, any error by the ALJ in failing to treat other alleged impairments as severe becomes harmless as long as the ALJ continues on to the next step of the analysis. Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008).

Plaintiff claims that the ALJ erred when she failed to treat hypertension as a severe impairment at step two. The ALJ found that plaintiff's hypertension was non-severe because there was no evidence of any limitations or restrictions associated with this condition. Dkt. # 11, at 262. Plaintiff has cited medical records where it is noted that she has high blood pressure, but her physicians did not place any restrictions on plaintiff because of this condition. There were two

instances in which plaintiff reported fluctuating blood pressure and dizziness. Id. at 187, 189. However, this does not show that plaintiff's hypertension occurred over a continuous period of time or that it significantly limited plaintiff's ability to work, and the ALJ did not err by finding that plaintiff's hypertension was a nonsevere impairment.

Plaintiff argues that the ALJ ignored medical evidence showing that she suffered from a severe hand impairment, because there were records showing that she complained of numbness in her hand. Dkt. # 21, at 9. The ALJ found that plaintiff's alleged hand impairment was a non-medically determinable impairment, because there were no physical evaluations tending to support plaintiff's subjective complaints of a hand impairment. Id. at 262. Plaintiff cites medical records that she complained of pain in her hand, but the ALJ was correct that there was no objective medical evidence tending to show that plaintiff's complaints of hand pain were medically determinable. Plaintiff claims that she could not afford treatment or medical evaluations and that her subjective complaints of hand pain should have been sufficient. Dkt. # 21, at 9. However, she was receiving treatment for back pain when she complained of hand pain, and there are no notes in the medical records suggesting that her physician believed that further examination of plaintiff's hand was necessary. Nothing in the administrative records suggests that plaintiff's inability to pay for treatment resulted in the non-diagnosis of a physical hand impairment.

Finally, plaintiff argues that she claimed to suffer from depression and the ALJ erred by treating this as a non-severe impairment. Id. at 10. The medical records cited by plaintiff show that she claimed to suffer from depression between December 2004 and March 2005. Id. at 194-200. To constitute a severe impairment, plaintiff's depression must have continued for a period of 12 months and affected her ability to work. See Aragon v. Astrue, 246 F. App'x 546 (10th Cir. July

13

31, 2007).[3] Plaintiff testified at the administrative hearing that she was depressed due to her inability to work. Dkt. # 11, at 285-87. This does not tend to show that she had a medically determinable mental impairment that prevented her from working. The ALJ appropriately focused on the medical evidence in determining if plaintiff had a severe mental impairment, and based on the medical evidence she reasonably concluded that plaintiff did not have a severe impairment of depression due to lack of duration of the condition.

### C.

Plaintiff argues that the ALJ's analysis of plaintiff's credibility was faulty, because the ALJ ignored medical evidence concerning the severity of plaintiff's pain and the existence of certain impairments. Dkt. # 21, at 10-11. She also claims that the ALJ failed to discuss her activities of daily life and the ALJ unfairly faulted plaintiff for not obtaining additional medical treatment when plaintiff testified that she could not afford such treatment. Id. at 12-13.

"Credibility determinations are peculiarly the province of the finder of fact," and such determinations are not to be upset "when supported by substantial evidence." Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). Nonetheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). Factors the ALJ may weigh in determining a claimant's credibility include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant

---

[3] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

> and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Id. at 1132. However, an ALJ does not need to provide a "formalistic factor-by-factor review of the evidence;" an ALJ needs only to "set[] forth the specific evidence [s]he relies on in evaluating the claimant's credibility." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Common sense should guide the review of an ALJ's credibility determination and technical perfection is not required. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

Much of plaintiff's challenge to the ALJ's credibility findings concern the ALJ's alleged errors in treatment of the medical evidence, but those arguments have been considered and rejected by this Court. See supra III.A. Plaintiff complains that the ALJ failed to discuss the activities of her daily life, and she claims that the ALJ arbitrarily deemed her to be less credible about events before October 28, 2010. However, plaintiff fails to consider the scope of the ALJ's review on remand, and the ALJ was primarily tasked with considering Dr. Lambert's letters and medical evidence between the date of onset of disability (May 31, 2004) and the date when plaintiff turned 55 (October 28, 2010). The Court has reviewed the ALJ's written decision and she did not simply deem plaintiff credible after October 28, 2010 and less credible before that date. Plaintiff takes isolated statements in the ALJ's written decision out of context, and it is clear that the ALJ's statements were made in light of the scope of the remand ordered by this Court and the Appeals Council. The Court finds no error with the ALJ's decision to limit review of plaintiff's credibility to the relevant time period. Plaintiff also argues that the ALJ improperly faulted plaintiff for failing to seek out medical treatment and that the ALJ relied on the lack of medical intervention to support a finding that plaintiff's impairments were less severe. Dkt. # 21, at 12. The ALJ did note that plaintiff's back pain was not "so severe as to have had surgical intervention, or even conservative

treatment such as TENS therapy or epidural steroidal injections," but the ALJ did not make this statement to show that plaintiff failed to seek out appropriate medical treatment. Dkt. # 11, at 266. Instead, the statement was made to show that such procedures had not been recommended by Dr. Lambert or any other treating physician. The Court also considers that plaintiff testified that her physicians had prescribed her painkillers but that her physicians had not recommended surgery. Id. at 282-83. In this context, plaintiff has not shown that the ALJ was required to consider plaintiff's alleged inability to pay for treatment as an excuse. The Court finds that the ALJ's credibility findings are supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 20) is **accepted**, and the Commissioner's decision is **affirmed**. A separate judgment is entered herewith.

**DATED** this 16th day of June, 2015.

_Claire V. Eagan_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE